MATTHEW G. MONFORTON
Montana State Bar No. 5245
MONFORTON LAW OFFICE, PLLC
32 Kelly Court
Bozeman, Montana 59718
Telephone:  (406) 570-2949
Facsimile: (406) 551-6919
E-mail: matthewmonforton@yahoo.com

DAVID P. CLAIBORNE
[Idaho State Bar No. 6579]
SAWTOOTH LAW OFFICES, PLLC
Golden Eagle Building
1101 W. River St., Ste. 110
Boise, Idaho 83702
Telephone: (208) 629-7447
Facsimile: (208) 629-7559
E-mail: david@sawtoothlaw.com

Attorneys for Applicants for Intervention

**FILED**

AUG 3 1 2021

Clerk, U.S. Courts
District Of Montana
Missoula Division

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
(MISSOULA DIVISION)

| | |
|---|---|
| **CENTER FOR BIOLOGICAL DIVERSITY**, *et al*.,<br><br>Plaintiffs,<br><br>vs.<br><br>**DEB HAALAD**, *et al*.,<br><br>Defendants;<br><br>and<br><br>**STATE OF IDAHO**, an Idaho nonprofit corporation; | Lead Case No. CV 20-181-M-DWM<br><br>Member Case No. CV 20-183-M-DWM<br><br><br>**MEMORANDUM IN SUPPORT OF MOTION TO INTERVENE AS PARTY-DEFENDANTS, OR IN THE ALTERNATIVE, TO APPEAR AS *AMICUS CURIAE*** |

Defendant-Intervenor;

and

**IDAHO STATE SNOWMOBILE ASSOCIATION, INC.**, an Idaho nonprofit corporation; **IDAHO RECREATION COUNCIL, INC.**, an Idaho nonprofit corporation; **COLORADO SNOWMOBILE ASSOCIATION**, a Colorado nonprofit organization; **BACKCOUNTRY SLED PATRIOTS**, a Montana nonprofit organization; **CITIZENS OFR BALANCED USE**, a Montana nonprofit organization; **UNITED SNOWMOBILE ALLIANCE**, a New Hampshire nonprofit organization; **AMERICAN COUNCIL OF SNOWMOBILE ASSOCIATIONS**, a Michigan nonprofit organization; **OFF ROAD BUSINESS ASSOCIATION**, a California nonprofit organization; **COLORADO OFF HIGHWAY VEHICLE COALITION**, a Colorado nonprofit organization; **TRAILS PRESERVATION ALLIANCE**, a Colorado nonprofit organization; **UNITED FOUR WHEEL DRIVE ASSOCIATION**, a California nonprofit organization; **CLEARWATER COUNTY BOARD OF COMMISSIONERS**, a political subdivision of the State of Idaho; **IDAHO COUNTY BOARD OF COMMISSIONERS**, a political subdivision of the State of Idaho; **BONNER COUNTY BOARD OF COMMISSIONERS**, a political

subdivision of the State of Idaho;
**VALLEY COUNTY BOARD OF COMMISSIONERS**, a political subdivision of the State of Idaho;
**ADAMS COUNTY BOARD OF COMMISSIONERS**, a political subdivision of the State of Idaho;
**LINCOLN COUNTY BOARD OF COMMISSIONERS**, a political subdivision of the State of Montana;
**MINERAL COUNTY BOARD OF COMMISSIONERS**, a political subdivision of the State of Montana;
**RAVALLI COUNTY BOARD OF COMMISSIONERS**, a political subdivision of the State of Montana;

Applicants for Intervention.

## TABLE OF CONTENTS

TABLE OF CASES AND AUTHORITIES ................................................................................5

I.   BACKGROUND ...................................................................................9

II.  THE APPLICANTS FOR INTERVENTION ................................................. 10

III. APPLICANTS' INTEREST IN THE OUTCOME .......................................... 12

IV.  PROCEDURAL HISTORY ........................................................................... 15

V.   ARGUMENT ................................................................................. 16

    A.   Applicants are entitled to Intervene as Party-Defendants as of Right ............... 16

        1.   Applicants have a significant protectable interest relating to the transaction that is the subject of this action ................................................. 17

        2.   As a practical matter, disposition of this action may impair or impede Applicant's ability to protect their interests ................................................. 19

MEMORANDUM IN SUPPORT OF MOTION TO INTERVENE AS PARTY-DEFENDANTS, OR IN THE ALTERNATIVE, TO APPEAR AS *AMICUS CURIAE* – Page 3

3. The existing Defendants <u>may</u> not adequately represent the interests of Applicants, and the interests they seek to protect are different than those of Applicants ............................................................................................ 20

4. Applicants' motion to intervene is timely brought ..................................... 23

B. Applicants Are Entitled to Permissively Intervene As Party-Defendants ..........24

1. Applicants have independent grounds for jurisdiction in the underlying action .......................................................................................................... 25

2. Applicants' motion to intervene is timely brought ..................................... 25

3. Applicants have claims and defenses that involve questions of law and fact in common with the original action brought by Plaintiffs ................... 26

C. In the alternative, if this Court denies intervention, then Applicants request that they be granted leave to participate in this action as *amicus curiae* ........... 27

VI. CONCLUSION ............................................................................................................27

# TABLE OF AUTHORITIES

*Cases*

*Bayshore Ford Trucks Sales, Inc. v. Ford Motor Co. (In re Ford Motor Co.),*
   471 F.3d 1233 n.34 (11th Cir. 2006)..............................................................27

*Cal. Dep't of Toxic Substances Control v. Commercial Realty Projects, Inc.,*
   309 F.3d 1113 (9th Cir. 2002) ........................................................................23

*Forest Conservation Council v. United States Forest Service,*
   66 F.3d 1489 (9th Cir. 1995).............................................................16, 21, 22

*General Motors Corporation v. Burns,*
   50 F.R.D. 401 (D. Haw. 1970) ........................................................................22

*Greene v. United States,*
   996 F.2d 973, 976 (9th Cir.1993)....................................................................18

*Hoptowit v. Ray,*
   682 F.2d 1237 (9th Cir. 1982) ........................................................................27

*Idaho v. Freeman,*
   625 F.2d 886 (9th Cir. 1980)...........................................................................18

*Kootenai Tribe of Idaho v. Veneman,*
   313 F.3d 1094 (9th Cir. 2002) ........................................................................26

*Newark Branch, N.A.A.C.P. v. Town of Harrison, N.J.,*
   940 F.2d 792 (3rd Cir. 1991) .........................................................................27

*Northwest Forest Resource Council v. Glickman,*
   82 F.3d 825 (9th Cir. 1996).............................................................................20

*Portland Audubon Soc'y v. Hodel,*
   866 F.2d 302 (9th Cir.1989).............................................................................18

*Sagebrush Rebellion v. Watt,*
   713 F.2d 525 (9th Cir. 1983).....................................................................18, 19

*San Jose Mercury News, Inc. v. U.S. Dist. Court--Northern Dist. (San Jose),*
   187 F.3d 1096 (9th Cir. 1999) ........................................................................25

*Sierra Club v. United States EPA,*
      995 F.2d 1478 (9th Cir.1993)................................................................................18

*Southwest Center for Biological Diversity v. Berg,*
      268 F.3d 810, 820 (9th Cir. 2001)............................................................ 17, 18, 20, 21

*United States v. Alisal Water Corp.,*
      370 F.3d 915 (9th Cir. 2004) .................................................................... 16, 23

*United States v. City of Los Angeles, California,*
      288 F.3d 3-91 (9th Cir. 2002)................................................................... 16, 17

*Washington State Bldg. & Constr. Trades Council v. Spellman,*
      684 F.2d 627 (9th Cir. 1982) *cert. denied,* 461 U.S. 913, 103 S.Ct. 1891,
      77 L.Ed.2d 282 (1982) ......................................................................................18

*Statutes*

28 U.S.C. 1331 ..........................................................................................................25

Fed. R. Civ. P. 24 .....................................................................................................20

Fed. R. Civ. P.24(a)..................................................................................................20

Fed. R. Civ. P. 24(a)(2) .......................................................................................16, 17

Fed. R. Civ. P. 24(b)..................................................................................................24

*Other Authorities*

3B Moore's Federal Practice, ¶ 24.07 [4] at 24-78 (2d ed. 1995) .............................21

7C WRIGHT, MILLER & KANE, FEDERAL PRACTICE AND PROCEDURE:
    CIVIL § 1908.2 at 368 (3rd ed. 2007 & Supp. 2010)............................................19

WRIGHT, MILLER & KANE, FEDERAL PRACTICE AND PROCEDURE:
    CIVIL § 1911 at 452 .......................................................................................26

**COME NOW** the Applicants for Intervention – **IDAHO STATE SNOWMOBILE ASSOCIATION, INC.**, an Idaho nonprofit corporation; **IDAHO RECREATION COUNCIL, INC.**, an Idaho nonprofit corporation; **COLORADO SNOWMOBILE ASSOCIATION**, a Colorado nonprofit organization; **BACKCOUNTRY SLED PATRIOTS**, a Montana nonprofit organization; **CITIZENS OFR BALANCED USE**, a Montana nonprofit organization; **UNITED SNOWMOBILE ALLIANCE**, a New Hampshire nonprofit organization; **AMERICAN COUNCIL OF SNOWMOBILE ASSOCIATIONS**, a Michigan nonprofit organization; **OFF ROAD BUSINESS ASSOCIATION**, a California nonprofit organization; **COLORADO OFF HIGHWAY VEHICLE COALITION**, a Colorado nonprofit organization; **TRAILS PRESERVATION ALLIANCE**, a Colorado nonprofit organization; **UNITED FOUR WHEEL DRIVE ASSOCIATION**, a California nonprofit organization; **CLEARWATER COUNTY BOARD OF COMMISSIONERS**, a political subdivision of the State of Idaho; **IDAHO COUNTY BOARD OF COMMISSIONERS**, a political subdivision of the State of Idaho; **BONNER COUNTY BOARD OF COMMISSIONERS**, a political subdivision of the State of Idaho; **VALLEY COUNTY BOARD OF COMMISSIONERS**, a political subdivision of the State of Idaho; **ADAMS COUNTY BOARD OF COMMISSIONERS**, a political subdivision of the State of Idaho; **LINCOLN COUNTY BOARD OF**

COMMISSIONERS, a political subdivision of the State of Montana; **MINERAL**
**COUNTY BOARD OF COMMISSIONERS**, a political subdivision of the State
of Montana; **RAVALLI COUNTY BOARD OF COMMISSIONERS**, a political
subdivision of the State of Montana – (herein "Applicants"), by and through their
attorneys of record, Monforton Law Offices, PLLC and Sawtooth Law Offices,
PLLC, and submit this memorandum in **SUPPORT** of their *Motion to Intervene as*
*Party-Defendants, or in the Alternative, to Appear as Amicus Curiae*, which is filed
herewith.

## I.     BACKGROUND

In this action, Plaintiffs seek to challenge the United States Fish and Wildlife
Service's ("Service") decision to withdraw the proposed rule to list the wolverine as
a threatened species under the Endangered Species Act ("ESA"). As the *Complaint*
(Dkt. 1) and *Amended Complaint* (Dkt. 5) make clear, Plaintiffs seek to establish
that the Service arbitrarily disregarded and dismissed the threat of winter
recreational activities on the wolverine's habitat. *Amended Complaint* (Dkt. 5) ¶¶
103, 110. Specifically, Plaintiffs allege that the Service ignored a new study that
concluded that winter recreational activities result in habitat loss to the wolverine.
*Id.* at ¶ 103.

Applicants are comprised of two groups: referred to herein as "Recreational
Interests" and "County Interests". The Recreational Interests group includes local

and nationally recognized snowmobile associations and trade groups located throughout the country (including but not limited to Montana, Idaho, and Colorado) that promote environmentally responsible, safe, and sustainable snowmobiling, and are dedicated to ensuring that public lands remain open for snowmobile use. The County Interests group includes Idaho and Montana counties whose economies rely upon the sport of snowmobiling for economic stimulation in the winter, and are also dedicated to ensuring that public lands remain open for public use.

If Plaintiffs prevail on their claim that the Service arbitrarily disregarded the threat of winter recreational activities on the wolverine habitat, then recreational snowmobiling will also be threatened, and likely curtailed. This interest will not be adequately represented or protected by federal Defendants nor Intervenor Defendant State of Idaho, and if the Applicants are not allowed to intervene, the Applicants' ability to protect their interest in continuation of winter recreational activities will be impaired or impeded. Applicants ought to be allowed to intervene so as to protect their interests in this action, or in the alternative, to appear as amicus curiae.

## II.   THE APPLICANTS FOR INTERVENTION[1]

Applicants are described in detail in the *Declaration in Support of Motion to Intervene*, filed herewith, and broadly can be separated in two groups, one

---

[1] The factual support for the matters discussed in Section II can be found at the *Declaration in Support of Motion to Intervene*, filed herewith, at paragraphs 2 through 32.

reflecting Recreation Interests and the other reflecting County Interests.  In the interest of judicial economy and efficiency, they appear together for this Motion and intend to proceed, if they prevail on the instant Motion, as a group, rather than separately appearing and burdening the court with redundant filings.  The Recreation Interests are motorized recreation groups and enthusiasts that enjoy winter motorized recreation activities on federal public lands.  They seek to preserve access to public lands and promote the sport of snowmobiling.  The County Interests are actual county governing bodies in Idaho and Montana.  These counties have an interest in protecting access and use of federal public lands, including winter motorized recreation, for their citizens and visitors.  Winter recreation is vital to the rural economies of the counties.

Applicants are very involved and interested in the management of federal public lands, activities thereon, and animals affected or unaffected by human activity.  Applicants attend public meetings, submit input, and otherwise participate in collaborative groups, planning processes, research projects and study activities of federal agencies, including those initiated by or coordinated by the Service.  Applicants are actively involved in travel management planning and land use planning activities on lands owned and/or managed by the U.S. Forest Service and the U.S. Bureau of Land Management, which often involves review, comment and analysis upon biological opinions of the Service, as well as other NEPA and

ESA implications. Preserving responsible motorized access to federal lands is an extremely high priority for Applicants. In the State of Idaho alone, annual snowmobiler trip expenditures are nearly $162 million and annual snowmobiler capital expenditures are nearly $62 million. The total annual economic output of snowmobile recreation in Idaho, when value added components are included, exceeds $223 million.

## III.   APPLICANTS' INTEREST IN THE OUTCOME[2]

A decision in Plaintiffs' favor threatens the economic vitality of local communities and presents the likelihood of loss of winter motorized access for snowmobiling and other recreation. The result may well be a decline in local economies bolstered by recreation activities. Moreover, the result may well lead to loss of recreation and intrinsic aesthetic enjoyment is allows – activities of human enjoyment such as appreciation of the environment, historic and cultural resources, enjoyment of leisure travel in nature, sightseeing, hunting, fishing, camping and adventure, wildlife viewing, plant viewing, bird watching, thrill-seeking, photography, and socialization with family and friends. Applicants emphasize the use of best available science and data, which indicates that the wolverine is well distributed and secure across its true historic range (which really does not include

---

[2] The factual support for the matters discussed in Section III can be found at the *Declaration in Support of Motion to Intervene*, filed herewith, at paragraphs 33 through 41.

MEMORANDUM IN SUPPORT OF MOTION TO INTERVENE AS PARTY-DEFENDANTS, OR IN THE ALTERNATIVE, TO APPEAR AS *AMICUS CURIAE* – Page 12

any significant portions of the contiguous United States). Consequently, the wolverine does not warrant ESA designation and wolverine protection is not a basis to limit or restrict winter motorized travel on federal public lands.

Any ESA listing will invoke procedural requirements and new restrictions on activities on federal lands. Such an unwarranted and unfounded listing action would reduce winter motorized recreation opportunities for the Recreation Interests, harm economic interests important to the County Interests, and impair the ability of all persons to use and enjoy federal public lands. Plaintiffs make clear in their allegations that they believe "disturbance from winter recreation activities . . . disrupt wolverine habitat use." See *First Amended Complaint*, Dkt. 5, at ¶ 4. Plaintiffs further challenge the validity of the Service's determination that the wolverine can maintain residency in areas with winter motorized recreation use. *Id.*, at ¶ 103. It is clear, therefore, that a decision in favor of Plaintiffs in this action will be used as a bootstrap to limit and reduce winter motorized recreation activity for the Recreation Interests and the areas they enjoy, and in the areas of influence of the County Interests.

The assertions Plaintiffs will rely on to curtail winter motorized recreation activity are unfounded. Available science demonstrates the populations of North American wolverine in the contiguous United States are at the extreme south boundary of their distribution – their historical home range is in Canada. Wolverine

MEMORANDUM IN SUPPORT OF MOTION TO INTERVENE AS PARTY-DEFENDANTS, OR IN THE ALTERNATIVE, TO APPEAR AS *AMICUS CURIAE* – Page 13

are, by nature, low density, have large home ranges, and exhibit long-range movements. The distribution information available for wolverine suggests records of occurrence and do not necessarily translate to occupancy. Due to the foregoing, it is very difficult to collect and monitor population data, specifically the number of wolverine in a geographic area. There is no historic population data with which to measure and evaluate current population estimates. Recent research data regarding external factors affecting wolverine has not documented negative impacts at the population level. It is important that the court be informed with respect to these issues, and winter motorized recreation impacts, or the lack thereof, by those with the most direct interest in that recreation.

If the Service is found to have wrongly dismissed the threat of winter recreation activities in the habitat area of the wolverine when making its decision to remove the ESA listing the wolverine as a threatened species, then recreational activity in the areas within the wolverine's habitat will be restricted, and most likely curtailed. This will undermine Applicants' substantial interests. Applicants have discrete, personal interests that do not belong to the general public. Applicants' members are specific groups which will potentially suffer and be threatened by the Service's decision whether or not to list the wolverine as a threatened species. Given Applicants' experience with other snowmobiling areas being threatened and/or restricted due to threatened species listings, Applicants are in a unique position to

explain their interests which are at stake in this litigation, and explain how the Service's decision at issue in this action affects them.

## IV.   PROCEDURAL HISTORY

Plaintiffs initiated this action on December 14, 2020.  Dkt. 1.  Service was effected on Defendants by January 14, 2021.  Dkt. 4.  An *Amended Complaint* was then filed on January 21, 2021.  Dkt. 5.  The court entered an order consolidating the member case with this case on February 2, 2021.  Dkt. 8.  The State of Idaho sought intervention on March 12, 2021.  Dkt. 12.  Days later the Defendants filed their *Answer*.  Dkt. 14.  On March 24, 2021 the court entered its order allowing the State of Idaho to intervene, Dkt. 19, and the State of Idaho filed its *Answer* on March 25, 2021, Dkt. 20.  The Federal Defendants subsequently sought leave to amend their answer, Dkt. 21, which the court granted, Dkt. 22, but said amended answer has not yet been filed.  The Administrative Record was lodged with the court on June 15, 2021.  Dkt. 23.

A *Joint Case Management Plan* was submitted to the court on March 12, 2021.  Dkt. 11.  It indicates expected intervention by the State of Idaho and potentially others.  *Id.*, at p. 5, fn. 1.  The plan further sets forth requirements that intervenors not duplicate argument of the Federal Defendants, sets forth deadlines for intervenors to file positions on substantive motions, and imposes word limits for argument.  *Id.*, at p. 4-7.  The Court accepted the same and entered a *Case*

*Management Order* on March 16, 2021. Dkt. 16. Applicants are willing to accept

and be bound by the terms of the existing *Case Management Order*, Dkt. 16.

## V.    ARGUMENT

### A.    Applicants are entitled to Intervene as Party-Defendants as of Right.

Applicants seek to intervene as a matter of right under Fed. R. Civ. P. 24(a)(2).

Said rule provides, in relevant part, as follows -

> On timely motion, the court must permit anyone to intervene who:
> . . .
> (2) claims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest.

The Ninth Circuit broadly interprets these requirements in favor of intervention.

*United States v. Alisal Water Corp.*, 370 F.3d 915, 919 (9th Cir. 2004); *United States*

*v. City of Los Angeles, California*, 288 F.3d 391, 397-98 (9th Cir. 2002) (citing

*Forest Conservation Council v. U.S. Forest Serv.*, 66 F.3d 1489, 1496 n. 8 (9th Cir.

1995)).   As such, district courts within the Ninth Circuit are guided primarily by

practical and equitable considerations in determining whether intervention is

appropriate. *Alisal Water Corp.,* 370 F.3d at 919. All well-pleaded, nonconclusory

allegations in the motion to intervene, the proposed responsive pleading in

intervention, and supporting declarations are taken as true absent sham, frivolity, or

other objections. *Southwest Center for Biological Diversity v. Berg,* 268 F.3d 810,

820 (9th Cir. 2001). A Rule 24(a)(2) motion should be granted if -

> (1) The applicant has a significant protectable interest relating to the property or transaction that is the subject of the action;
>
> (2) Disposition of the action may, as a practical matter, impair or impede the applicants' ability to protect that interest;
>
> (3) The existing parties may not adequately represent the applicants' interests; and
>
> (4) The application is timely.

*City of Los Angeles*, 288 F.3d at 397; *see also* Fed. R. Civ. P. 24(a)(2).

### 1.     Applicants have a significant protectable interest relating to the transaction that is the subject of this action.

The Ninth Circuit holds that intervention is allowed as a matter of right if a

party has "a <u>practical</u> interest in the outcome" of the case. *City of Los Angeles,* 288

F.3d at 397-98 (emphasis in original) (citation omitted). The Circuit has reasoned

that -

> In evaluating whether these requirements are met, courts "are guided primarily by practical and equitable considerations." Further, courts generally "construe[ ] [the Rule] broadly in favor of proposed intervenors." "'A liberal policy in favor of intervention serves both efficient resolution of issues and broadened access to the courts. By allowing parties with a *practical* interest in the outcome of a particular case to intervene, we often prevent or simplify future litigation involving related issues; at the same time, we allow an additional interested party to express its views before the court.'"

*Id.* (internal citations omitted). "Whether an applicant for intervention demonstrates

sufficient interest in an action is a practical, threshold inquiry. No specific legal or

equitable interest need be established." *Southwest Center for Biological Diversity v.*

MEMORANDUM IN SUPPORT OF MOTION TO INTERVENE AS PARTY-DEFENDANTS,
OR IN THE ALTERNATIVE, TO APPEAR AS *AMICUS CURIAE* – Page 17

*Berg,* 268 F.3d at 818 (citing *Greene v. United States,* 996 F.2d 973, 976 (9th Cir.1993); *Portland Audubon Soc'y v. Hodel,* 866 F.2d 302, 308 (9th Cir.1989)). "It is generally enough that the interest [asserted] is protectable under some law, and that there is a relationship between the legally protected interest and the claims at issue." *Southwest Center for Biological Diversity v. Berg,* 268 F.3d at 818 (citing *Sierra Club v. United States EPA,* 995 F.2d 1478, 1484 (9th Cir.1993)).

Notably, the Circuit allows intervention as a matter of right in cases where the interests were less plainly protected by traditional legal doctrines. *Sierra Club v. U.S. E.P.A.*, 995 F.2d 1478, 1482 -1483. For example, in *Washington State Bldg. & Constr. Trades Council v. Spellman,* 684 F.2d 627 (9th Cir. 1982), *cert. denied,* 461 U.S. 913, 103 S.Ct. 1891, 77 L.Ed.2d 282 (1982), the court permitted intervention as of right by the advocacy group which had sponsored and lobbied for enactment of an antinuclear statute in a suit brought challenging its constitutionality under the Supremacy and Commerce Clauses. Also, in *Idaho v. Freeman,* 625 F.2d 886 (9th Cir. 1980), the court held it was in error to deny intervention as of right to the National Organization of Women in a suit brought by the State of Idaho challenging procedures for implementation of measures suggested by the proposed Equal Rights Amendment. In *Sagebrush Rebellion v. Watt,* 713 F.2d 525 (9th Cir. 1983), the court determined that the National Audubon Society ought to be allowed to intervene as of right to represent the interests of habitat advocates in a suit challenging

administrative creation of a large conservation area, and expressly held that "[a]n adverse decision in this suit would impair the society's interest in the preservation of birds and their habitats." *Id.* at 528.

As is plainly apparent, the Ninth Circuit regularly permits intervention by groups having a significant interest in suits involving governmental actions. Like in *Sagebrush Rebellion* where the Ninth Circuit allowed habitat advocates to intervene to defend their interests in preservation of birds and their habitats, here the Court should also allow Applicants to intervene, as they have a significant interest in the preservation of public lands for recreational use, and an adverse decision in this case would threaten that interest.

> **2.      As a practical matter, disposition of this action may impair or impede Applicants' ability to protect their interests.**

Under the second part of the test for intervention, if an absent party would be substantially affected in a practical sense by the determination made in the action, then that party should be entitled to intervene. "It is generally agreed that in determining whether disposition of the action will impede or impair the movant's ability to protect its interest the question must be put into practical terms rather than in legal terms." 7C WRIGHT, MILLER & KANE, FEDERAL PRACTICE AND PROCEDURE: CIVIL § 1908.2 at 368 (3rd ed. 2007 & Supp. 2010). "This rule is satisfied whenever disposition of the present action would put the movant at a practical disadvantage in protecting its interest." *Id.* at 369. The advisory committee

notes to Rule 24 state that "[i]f an absentee would be substantially affected in a practical sense by the determination made in an action, he should, as a general rule, be entitled to intervene." Fed. R. Civ. P. 24 advisory notes; *Southwest Center*, 268 F.3d at 822.

Applicants will be substantially affected by this Court's determination of the validity of the Service's action at issue in this case. The *Amended Complaint* makes clear that if the Service is found to have wrongly dismissed the threat of winter recreation activities in the habitat area of the wolverine when making its decision to remove the rule listing the wolverine as a threatened species, then recreational activity in the areas within the wolverine's habitat will be restricted, and most likely curtailed. This will undermine Applicants' substantial interests.

> **3.    The existing Defendants may not adequately represent the interests of Applicants, and the interests they seek to protect are different than those of Applicants.**

The Ninth Circuit has a tripartite test for this third element of Rule 24(a): (1) whether the interests of the present party are such that it will undoubtedly make all of the intervenors' arguments; (2) whether the present party is capable and willing to make those arguments; and (3) whether the would-be intervenors would offer any necessary elements to the proceedings that other parties would neglect. *Southwest Center*, 268 F.3d at 822 (citing *Northwest Forest Resource Council v. Glickman*, 82 F.3d 825, 838 (9th Cir. 1996)). The courts have been consistently clear that the

burden on the applicant is minimal and the applicant need only show that representation of its interests by existing parties "may be" inadequate. *Id.* at 823. The court's focus should be on the subject of the action and not merely the particular issues before the court at the time of the motion. *Id.* Any presumption of adequate representation due to a shared ultimate objective is rebuttable if Applicants and the existing Defendants have incongruent interests. *Id.* Inadequate representation may be found when the applicant asserts a discrete, personal interest that does not belong to the general public. *Forest Conservation Council v. United States Forest Service*, 66 F.3d 1489, 1499 (9th Cir. 1995) (quoting 3B Moore's Federal Practice, ¶ 24.07 [4] at 24-78 (2d ed. 1995)).

With respect to private and local interests, it should not be expected that a state or federal governmental entity will protect private interests because it has different and varying priorities - that is, while the original party and intervenor may share in the interest of the ultimate outcome, inadequate representation arises where the intervenor has property or financial interests at stake that create an incentive to make additional arguments that a government entity may not advance. *Southwest Center*, 268 F.3d at 823. For example, in *Forest Conservation Council*, the Ninth Circuit held that the district court erred when it denied a state's and county's motions to intervene in a case where the forest service was the original defendant, since the forest service was not charged with a duty to represent the more "narrow, parochial

MEMORANDUM IN SUPPORT OF MOTION TO INTERVENE AS PARTY-DEFENDANTS, OR IN THE ALTERNATIVE, TO APPEAR AS *AMICUS CURIAE* – Page 21

interests" of the state and county moving to intervene—instead, the federal "government must present the broad public interest," and not just the economic concerns of a certain industry, state, or county. 66 F.3d at 1499. Likewise, in this case, the federal defendants must represent the broader public interest, not the narrow, parochial interests of the County Interests and Recreational Interests seeking to intervene in this case, and so their interests are not adequately represented. Accordingly, they should be allowed to intervene.

If an original party does not have access to relevant facts that are available to an intervenor, or where the original parties lack the technical knowledge and expertise that form the basis for the transaction at issue in the action, and the intervenor has that knowledge and expertise, then inadequate representation arises. *General Motors Corporation v. Burns*, 50 F.R.D. 401, 405-06 (D. Haw. 1970). In the *General Motors* case, the court held it was appropriate to allow an auto dealer association to intervene in an action brought to enjoin application and enforcement of a statute for several reasons, two of which include: (1) the association provided the legislature with the resource information demonstrating the need for the legislation to protect public interests, and (2) the association had unique knowledge of the industry sought to be protected by the challenged statute. Applicants are similarly situated in the context of this action, and therefore its interests may not be adequately protected by the original Defendants.

Applicants' members clearly have discrete, personal interests that do not belong to the general public.  Applicants' members are specific groups which will potentially suffer and be threatened by the Service's decision whether or not to list the wolverine as a threatened species.  Given Applicants' experience with other snowmobiling areas being threatened and/or restricted due to threatened species listings, Applicants are uniquely positioned to explain their interests in this litigation, and explain how the Service's decision at issue in this action affects them.

**4.    Applicants' motion to intervene is timely brought**.

Whether an application to intervene is timely requires that the court consider - (1) the stage of the proceedings at which the applicant seeks to intervene; (2) the prejudice to other parties; and (3) the reason for and length of any delay.  *See Alisal Water Corp.,* 370 F.3d at 921 (citing *Cal. Dep't of Toxic Substances Control v. Commercial Realty Projects, Inc.,* 309 F.3d 1113, 1119 (9th Cir. 2002)).

This action is in its early stages.  Plaintiffs have not sought any form of immediate or extraordinary relief, and no dispositive or substantive motions have been filed by the parties.  This action was initiated on December 14, 2020.  A case management plan has been submitted, and the administrative record was submitted on June 15, 2021.  An amended administrative record, if necessary, is due on August 31, 2021, and any motions relating to the completeness of the administrative record are also due on August 31, 2021.  Plaintiffs' Motion for Summary Judgment is not

due until September 30, 2021, Federal Defendants' Cross-Motion for Summary Judgment is not due until November 12, 2021, and Defendant-Intervenor(s)' Motion for Summary Judgment is not due until November 19, 2021. Clearly, this action is in its infancy and is just getting going now that the administrative record has been submitted.

Furthermore, according to the Proposed Joint Case Management Plan filed March 12, 2021, discovery is not expected to be conducted, and the case is expected to be resolved through summary judgment motions based on the administrative record. Applicants are willing and able to comply with the deadlines already established in this action. Clearly, allowing intervention will not prejudice the existing parties to this action. Applicants are bringing this request at a timely and appropriate time so as to ensure the proceedings are not delayed by their intervention.

**B.    Applicants Are Entitled To Permissively Intervene As Party-Defendants.**

In the alternative to intervention as of right, Applicants are entitled to permissively intervene in this action. Fed. R. Civ. P. 24(b) provides a basis for permissive intervention, and provides, in relevant part, as follows –

(1) *In General.* On timely motion, the court may permit anyone to intervene who:

. . .

(B) has a claim or defense that shares with the main action a common question of law or fact.

MEMORANDUM IN SUPPORT OF MOTION TO INTERVENE AS PARTY-DEFENDANTS, OR IN THE ALTERNATIVE, TO APPEAR AS *AMICUS CURIAE* – Page 24

. . .

(3) *Delay or Prejudice.* In exercising its discretion, the court must consider whether the intervention will unduly delay or prejudice the adjudication of the original parties' rights.

Whether to allow permissive intervention is a discretionary decision for this Court. There are three elements a party must establish to be entitled to permissively intervene in an action. "[A] court may grant permissive intervention where the applicant for intervention shows (1) independent grounds for jurisdiction; (2) the motion is timely; and (3) the applicant's claim or defense, and the main action, have a question of law or a question of fact in common." *San Jose Mercury News, Inc. v. U.S. Dist. Court--Northern Dist. (San Jose),* 187 F.3d 1096, 1100 (9th Cir. 1999).

### 1. Applicants have independent grounds for jurisdiction in the underlying action.

Plaintiffs bring this action challenging the Service's decision to withdraw the proposed rule to list the wolverine as a threatened species under the federal Endangered Species Act ("ESA"). These are all claims arising under the federal ESA for which federal question jurisdiction arises under 28 U.S.C. 1331. Applicants intend to present defenses to these claims, and therefore have an independent basis for jurisdiction.

### 2. Applicants' motion to intervene is timely brought.

For the reasons discussed and argued above at Section V.A.4. of this *Memorandum*, Applicants have timely advanced their motion to intervene.

**3.  Applicants have claims and defenses that involve questions of law and fact in common with the original action brought by Plaintiffs.**

A party seeking permissive intervention as a defendant has a defense in common with the underlying action so long as the intervenor may assert a defense that is directly responsive to the claims made by the original plaintiffs. *Kootenai Tribe of Idaho v. Veneman,* 313 F.3d 1094, 1110 (9th Cir. 2002) (holding that intervenors satisfied Rule 24(b) because they asserted defenses directly responsive to the claims for injunction).  Furthermore, permissive intervention is appropriate where the intervenor has some "economic interest in the outcome of the suit." WRIGHT, MILLER & KANE, FEDERAL PRACTICE AND PROCEDURE: CIVIL § 1911 at 452.  The argument provided above in Section V.A., as well as the Applicants' supporting *Declaration* filed herewith, firmly establish that Applicants, and their members, have common interests with the Defendants and Intervenor State of Idaho in seeking to uphold the Service's decision.  Applicants' focus, of course, will be on private economic and recreational interests, but ultimately those interests align with other parties to this action that seek to support the integrity of the Service's decision.  As such, at a minimum, permissive intervention is appropriate.

**C.   In the alternative, if this Court denies intervention, then Applicants request that they be granted leave to participate in this action as *amicus curiae*.**

Permitting participation as *amicus curiae* is within the broad discretion of the Court. *Hoptowit v. Ray*, 682 F.2d 1237, 1260 (9th Cir. 1982). Federal district courts "possess the inherent authority to appoint 'friends of the court' to assist in their proceedings." *Bayshore Ford Trucks Sales, Inc. v. Ford Motor Co. (In re Ford Motor Co.)*, 471 F.3d 1233, 1249 n.34 (11th Cir. 2006). *Amici* may assist a district court "in cases of general public interest by making suggestions to the court, by providing supplementary assistance to existing counsel, and by insuring a complete and plenary presentation of difficult issues so that the court may reach a proper decision." *Newark Branch, N.A.A.C.P. v. Town of Harrison, N.J.*, 940 F.2d 792, 803 (3rd Cir. 1991). If the Court denies Applicants' request to intervene, then Applicants respectfully request to participate as *amicus curiae* so that they can weigh in on their unique and parochial interests.

## VI.   CONCLUSION

For the above and foregoing reasons, Applicants ought to be permitted to intervene in this action as party-defendants, and their *Motion to Intervene as Party-Defendants* ought to be **GRANTED**. If this Court does not grant intervention, then in the alternative, Applicants ought to be permitted to participate in this action as *amicus curiae*.

**DATED** this 30th day of August, 2021.

                  MONFORTON LAW OFFICES, PLL

                  by: */s/  Matthew G. Monforton*_
                  Matthew G. Monforton

                  SAWTOOTH LAW OFFICES, PLLC

                  by: */s/  David P. Claiborne*_
                  David P. Claiborne

## CERTIFICATE OF COMPLIANCE

The undersigned certifies that the foregoing support brief complies with the 6500-word limit of L.R. 7.1(d)(2) in that it consists of 4,717 words as calculated by Microsoft Word, excluding the parts of the brief exempted by the rule; and with L.R. 1.5(a), in that it is double spaced except for quoted material and footnotes, and typewritten in 14-point font size.

**DATED** this 30th day of August, 2021.

MONFORTON LAW OFFICES, PLLC

by: /s/  Matthew G. Monforton_
Matthew G. Monforton

SAWTOOTH LAW OFFICES, PLLC

by: /s/  David P. Claiborne_
David P. Claiborne

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing document was served on the following on this 30th day of August, 2021, by the following method:

**AMANDA DALMENDRAY GALVAN**
**TIMOTHY J. PRESO**
**EARTHJUSTICE LEGAL DEFENSE**
**FUND – BOZEMAN**
313 East Main Street
Bozeman, MT 59715
Telephone: (406) 586-9699
Facsimile: (406) 586-9695
Email: agalvan@earthjustice.org;
tpreso@earthjustice.org
*Attorneys for Center for Biological Diversity,*
*Conservation Northwest, Defenders of*
*Wildlife, Friends of the Clearwater, Greater*
*Yellowstone Coalition, Idaho Conservation*
*League, Jackson Hole Conservation Alliance,*
*Klamath-Siskiyou Wildlands Center, Rocky*
*Mountain Wild and Sierra Club*

[__] U.S. First Class Mail, Postage Prepaid
[__] U.S. Certified Mail, Postage Prepaid
[__] Federal Express
[__] Hand Delivery
[__] Facsimile
[_X_] iCourt / Electronic Mail or CM/ECF

**KAMELA A. CASCHETTE**
**RANDY J. TANNER**
**U.S. DEPARTMENT OF JUSTICE**
Environmental & Natural Resources Div.
Ben Franklin Station
PO Box 7611
Washington, DC 20044-7611
Telephone: (202) 305-0340
Facsimile: (202) 305-0275
Email:kamela.caschette@usdoj.gov;
randy.tanner@usdoj.gov
*Attorneys for Scott de la Vega, Martha*
*Williams, United States Fish and Wildlife*
*Service*

[__] U.S. First Class Mail, Postage Prepaid
[__] U.S. Certified Mail, Postage Prepaid
[__] Federal Express
[__] Hand Delivery
[__] Facsimile
[_X_] iCourt / Electronic Mail or CM/ECF

**OWEN H. MORONEY**
**IDAHO OFFICE OF THE ATTORNEY**
**GENERAL**
2117 North 17th Street
Boise, ID 83702
Telephone: (208) 287-2875
Facsimile (208) 334-2148
Email: owen.moroney@idfg.idaho.gov
*Attorneys for State of Idaho*

[__] U.S. First Class Mail, Postage Prepaid
[__] U.S. Certified Mail, Postage Prepaid
[__] Federal Express
[__] Hand Delivery
[__] Facsimile
[_X_] iCourt / Electronic Mail or CM/ECF

MONFORTON LAW OFFICES, PLLC

by: /s/  Matthew G. Monforton_
Matthew G. Monforton